All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is now open. Pursuant to adjournment, the Honorable Michael M. Burke presides. Please be seated. Excuse me, Your Honor. It's Michael J. Burke. That's okay. My motor might be mad. On the first case, 213-07-01, G.M. Sign, Inc. v. Swiderski Electronics, on behalf of the appellant, Mr. David M. Oppenheim, on behalf of the appellate, Mr. Michael Reese. Thank you. Mr. Oppenheim, you may proceed. Thank you, Your Honors. May it please the Court, my name is David Oppenheim. I'm here on behalf of the appellant, G.M. Sign, and the proposed class. The heart of this appeal is whether in Illinois it means what we have the same logic that they have in federal court, where in Holtzman v. Terza, the court noted that class certification is normal in TCPA cases because there are always common questions. Well, the issue is not whether there's a common question, but whether or not it predominates. Exactly. And it's the same issue, interestingly, that has been addressed by countless courts in this state. We've cited some of them in page 16 of our opening brief because in these cases, there aren't a whole lot of places that a defendant can go. The place that they go most often is, hey, we have established business relationships with everyone, prove that we don't. And what courts do in those circumstances and what we submit should have been done here, and what interestingly was done in another McHenry case that this court affirmed in 2012, is simply carve out anybody with an established business relationship from the class. Here, the facts are as follows, and there aren't a lot of them that matter. Hold on a second. How would we carve them out? What's your mechanism? A class definition that says persons who received the facts advertising the goods, products, or services of defendants and who did not give prior express consent or have an established business relationship. But doesn't that, in effect, require the mini trial? I don't believe it does because this is the same circumstance as in the other case that this court dealt with in 2012, J.T.'s Frames v. Sunhill. And just like in that case, while the defendant was making vague statements about, hey, we have established business relationships, in that case, we did the same thing that we did here, which is we compared all of the defendant's records that were produced in the case. We looked for all through everything, and we matched them up against all 2,584 records of transmissions. And in this case, we came up with 36 matches. Wasn't there a dispute, though, over how you compared apples and oranges? I don't believe that there is. The dispute is the defendants say, hey, well, we may not have complete records anymore, but I don't see how that's the class' fault. But it really is a pretty cut-and-dry technical thing. And moreover, to the extent that there is some sort of dispute about our methodology, defendants had their opportunity to say, hey, these are all the people we have established business relationships with, and they came up with 45. And so even if we agree that it's 45 and not 36, that still leaves 2,500-odd class members, and that's plenty to satisfy a numerosity requirement. In JT frames, was there evidence that the defendant purchased a list? None. It was the same. Their evidence was that they created their list from within? Correct. That's correct, Your Honor. Because that's the issue that the trial court seemed to rule on, and that was that it was unrebutted that this list was created through prior business contacts. Well, and that's roughly the same thing as JT's frames, which is nobody knows. In JT's frames, the defendant made the same statement, and the defense was the same, or the plaintiff's rebuttal was the same as in this case, which is, well, I don't have an established business relationship with you, which is, I think, equally undisputed that GM signed as not. And moreover, I have an expert, and we didn't get an expert to do it in this case. In this case, we did it in-house. But either way, we went through and looked at all the records and pulled out the matches. And there were 30 matches in JT's. And so that was the rebuttal. The rebuttal is the facts don't support your claim that you had a practice of culling a list from people from your internal contacts. And that's your argument that that's the common issue, at least at this point in time, is how the list was created. Yeah. I mean, I think the common issue is that all of these people got these advertising faxes and that only 36 or 45 of them there's a defense as to. Did you file a motion to reconsider? We did file a motion to reconsider, Your Honor. What was the purpose of it? The purpose of it was to bring in additional evidence, which were the potential substitute plaintiffs, the additional six class members who also attest unconditionally they had no prior relationship with the defendant, and then also to, I guess, just amplify the evidentiary record and show that there really is nothing to support. How is that relevant or material? Because I don't recall the trial court finding that they were or would be distinguishable from your situation. Because I thought the trial court was finding that the reason for non-certification was for reasons other than whether or not your client was qualified or not. Right. The reason was buying into the very thin claim that there was a mass or universal EBR defense, and essentially the argument in the original motion is, well, your client's an anomaly. Well, we now have six more people, and how many anomalies can there be before the entire premise is called into question? What's the logic, though? If for some reason if we affirm the trial court's non-certification on the basis that the predominant evidence relates to or the predominant inference is that there will be individual trials as opposed to a common trial of the class, how would adding six additional plaintiffs change anything? I don't know that it would. I think that the purpose, again, was to point out that there really is no need for these many trials because there is nothing concrete to support the notion that everybody's got an EBR defense. Really, where that comes from is not from any sort of statement by the faxers themselves, but by a statement made in the deposition by the guy who purchased the assets of the company that went out of business who said that his understanding was that the only people they sent to were prior customers and that they didn't get a third-party list. That's the only source of this. And again, the fact that you've got 90-some-odd percent of people that don't show up in the defendant's records getting these faxes and you've got at least seven people willing to swear under oath that they had no relationship, I think that that evidence set against this hearsay statement by the guy who bought the company. Counsel, you just said two things that don't strike me as being synonymous or equal. You said Swerdowski bought the assets, but Downey just said that he bought the company. Now, my understanding is that when you buy the assets, you don't necessarily buy the company. Yes. Yes, Your Honor. Which is it? It's the first. I misspoke the second time. The company went out of business. It was an asset purchase. Then if it went out of business, why are you suing a successor entity that isn't the prior corporation, but merely the holder of its assets? That's an incredibly good question, Your Honor. That wasn't something that's part of this appeal. I think that we wanted to be over-inclusive, and certainly that would be something we would have to address if we had to deal with a motion to dismiss that entity or that person, which we haven't had to do. What was to keep the trial court from certifying the class on your common question? And then if the common question showed that, in fact, the defendant did produce this list through prior business contacts, then decertifying the class. That certainly would have been a way to go. I think that that's more of an acceptable way to go. And limit discovery to that issue. That's certainly something that can be done on remand if this court orders it. Let's get to remand for a second. We may not be off this topic of commonality and all that yet, but there was a motion to dismiss that was granted. You're asking us to reverse that. If we were to reverse that, what's the posture of this case regarding the commonality issues and the certification of the class? What's the procedural posture of this case right now? Well, I think that we then have a live motion to reconsider on the class certification. Does this panel get to the issue of commonality and all those things if we were to reverse the motion to dismiss? I think you do because we're also appealing the original class certification decision. And obviously, whatever your honors do with that particular issue is going to shape what happens on remand. For example, we would ask that you reverse the trial court and order certification based on the same logic in Taranto and Sunhill. But if you don't go there, you could say some things theoretically that would nullify our motion to reconsider. Or you could just say, trial court, you should have allowed this motion to reconsider and the evidentiary process to play out. The court allowed new evidence on the motion to reconsider. The defendant chose to file a motion to dismiss instead of going forward with that. Have they waived that right to go forward with that? If the case were to be remanded and the motion to reconsider was now back on the table? Yeah, I think that's certainly arguable. They had their shot at taking their evidence about our new plaintiffs and chose not to do that. Well, let's say they haven't waived it, all right? The trial court found that the evidence regarding the preparation of this list was unrebutted. Now, part of your motion to reconsider and part of this new discovery was to perhaps sway the trial court in saying that it was not unrebutted. That's correct, Your Honor. So how do we get to the merits of that issue then when it's still on the table? The trial court has not ruled upon a motion to reconsider. So this motion to certify the classes, I mean, ruled initially motion to reconsider. You're going forward trying to tell the trial court something else. I mean, your argument seems to me what you just said was almost like an advisory opinion. What we said will shape what happens on remand. Well, that's well and good, but are we supposed to be shaping what happens on remand if there's a motion still pending that could play out differently than it first played out? Yeah. I mean, it's sort of an odd procedural setup and I think brought on because we had this motion to dismiss that short-circuited everything. But, yes, there's a live motion to reconsider and normally in appellate practice that gets dealt with before the appellate court steps in. But because the case was over and we had to appeal everything, we appealed everything. And one of the things we appealed was the initial class cert denial. So I think that certainly one route to go would be to say this dismissal was improper. The motion to reconsider was on the table. Trial court will deal with it and then we'll deal with the class cert stuff when we come back if necessary. I think that that's logical, but I think that we also are appealing the original decision on the original record because we think that it's basically the same as Sunhill and that that would save needing to deal with a motion to reconsider. With your motion, there, to me, at least in my mind, are at least two possibly more motions to consider. One is a motion to consider where there's no new evidence presented. You're just asking the court to rethink or reconsider. And the other one is a motion to reconsider where new evidence that wasn't previously presented, which arguably is evidence that couldn't have been presented previously, is going to be or is presented. Which of the two motions to reconsider does your motion to reconsider fall into? I think it is a little bit of both, but to the extent I have to pick one, there is new evidence. Neither too hot nor too cold nor too soft or hard. Exactly. Just right. Okay. There are the affidavits of the six. What would be your new evidence? The affidavits of the six. And why was that not available before? We frankly think we needed it before because... I didn't ask you whether you needed it. Okay. Why was it not available? That's the standard. These are not people that were our clients before. These were unnamed class members that we went out and found after the original ruling. Could you have found them before? That's the question. And I don't mean to paint you into a corner here, but I'd appreciate you answering my question. Okay. Sure. The answer is we possibly could have done so. I don't know. We found them when we undertook the effort to do so. I don't know whether that would have been successful at a different time. Okay. Did the other side move to strike your motion to reconsider based upon these issues that things were brought up in the motion that could have been brought up earlier? I suppose they could have. No, did they? No, they did not. They filed a motion to dismiss. And I guess getting back to the last point I wanted to make about the class certification issues, is that there's a very recent Seventh Circuit decision that came out at the end of March called Chapman v. Wagner Equities, in which Judge Posner said basically in dealing with a similar argument to this, well, we have issues about EBR with everybody, so there are many trials. The issue in that case was the argument was that only the owner of the fax machine has a claim. So we have a mini trial about whether all the entries in the logs match up with the owners of the fax machines. And the court rejected the premise but went further and said, how many, if any, of the class members have a valid claim? Is the issue to be determined after the class is certified? Recipients of faxes who don't have rights under the TCPA just wouldn't be entitled to share in the damages awarded to the class by a judgment or settlement, which goes to show that the defendant's argument about ownership, like the argument here about EBR, does not really address the appropriateness of class certification and so doesn't belong in the appeal. The argument is not that class should not have been certified, but that some persons or firms have been mistakenly included in it. Mr. Hoffman, your time is up. Thank you. Thank you. Mr. Reese, you may proceed. Thank you, and may it please the Court, Mike Reese is on behalf of the defendant, Helene Swiderski, Electronics. Before I get to my argument, I just want to say that the last decision that counsel is quoting from is not cited in the briefs, and I don't think that's appropriate. If he thought it was that important to bring up an oral argument, maybe he should have filed a motion to cite it ahead of time or supplement. Going to the argument, first we submit the trial court could have used its discretion in denying class certification. In support of its motion, GM signed offer testimony only on its own lack of an EBR with Swiderski. Adjudication of GM's claim, even if successful, and the trial judge made no determination on that issue, would not have demonstrated a right of recovery in the class as a whole. On this record, the court could conclude that the EBR defense called for inherently individualized assessment of each claim so that common questions did not predominate over questions specific to individual class members. The TCPA does not prohibit the sending of all advertisements to a fax machine. It prohibits only what is an unsolicited advertisement, defined as one that is sent without prior invitation or permission. The permission can be written or it can be oral. There is no liability if the sender has an EBR with the recipient. Swiderski did not use, and I know the panel was asking questions about this, Swiderski did not use a third-party broadcaster and it did not purchase marketing lists. Instead, it had its own proprietary customer database assembled by its own salespeople from emails, trade show attendance, telephone calls, past and current customers. Did the trial court improperly shift the burden to the plaintiff regarding the EBR issue? No, Your Honor, it did not. First of all, the overall burden at all times rested with the plaintiff. The plaintiff had to show that each of the four requirements in Section 2-801 was satisfied. Now, whether you call an EBR an affirmative defense or not, the fact remains that overall the burden rests with the plaintiff, not with the defendant, to show that it's appropriate to proceed as a class action. Concerning the question about how we developed our database, GM-Sign simply presented no evidence to the contrary. In addition to the general evidence that we had about the database, we produced specific examples of contacts with those in the August log. The log, which is not on the record, identifies each recipient by contact information, including company name, point of contact, and fax number. We had an EBR with the original plaintiff, Ernie Rizzo, and the log lists a point of contact for GM-Sign with an unpublished number and a point of contact, Richard Shaw. Did the trial court seem to determine, at least at that time, that the plaintiff had made a case that they didn't have an EBR? The trial court made some comment to that effect. Well, it's important because the class action is a procedural device. You're not going to try to make any determinations to liability at that stage. And I think that all the trial court was saying was that you may have presented evidence that there was no EBR between GM-Sign and Swarderski, but you didn't present evidence as to anyone else. We don't have a contact list, but what – I'm sorry. Has your client ever tendered the $1,500 plus costs unconditionally to the plaintiff? We made an offer of maximum relief, including an injunction. As far as tender, we emailed the offer, and that's all that I think is required. It was unconditional. It wasn't as if we were saying you only get the money if you promise not to appeal. All right. We didn't take any conditions. You gave 12 days to respond. Which is comparable to the 14-day period under the federal rules, Rule 68 of the Civil Procedure. That has an offer of judgment for 14 days. And there's never been a suggestion that they didn't have enough time to consider the offer on behalf of their client. That's never been their contention, that they didn't have enough time, that they needed more time. When you had the hearing on the motion to dismiss, there was no offer on the table. The offer had been made, and it had not been accepted. And under the case law, an unaccepted offer of full relief moots the judgment. So whether it was on the table or not, they— An unconditional offer of full relief. Yes, an unconditional offer. Again, now the question is, and I'm sure your opponents could argue, that placing a time limit on it is in fact placing a condition upon that offer. It's not under the—you can always have a reasonable time, Your Honor, and under the federal rules, you can have a 14-day period. That's what it is. What is important is not how much time you have, assuming it's enough time to accept. It's whether or not the relief offered is full and complete to moot the claim. So theoretically, I could say, I'm going to make you this offer, and it's open for five minutes, and then when five minutes is up, the case is mooted. No, I don't think anybody would ever argue that a five-minute offer is unreasonable. How about five days? Well, if you have enough time to accept it or— So five days would be enough, then that's not a condition. It might—it would not be the type of condition that made the relief any less full if it was accepted within the time. Well, when we look at the old interest cases, you know, where you make an offer to avoid paying interest in the future, that offer has to be unconditional and remain open at all times. I mean, is this equivalent to that? I don't believe that the two are comparable because if you're talking about the concept— I mean, in one case, you're talking about an offer that's unconditional so that it stops the accrual of interest. That's—unless you're actually selling the case, you're making that offer so that it stops the accrual of interest. Here, you need to have standing in a personal state to proceed with the litigation. And if you make an offer that gives the plaintiff every last penny to which the plaintiff is entitled, but you make that offer and say, look, it's open for—if it's open for 14 days, that's the offer of judgment under the federal rules. If you say it's 12 days here, you know, okay, is there—can you draw a line? I'm not going to get up here and say, you know, the line is 5 days, 7 days, 10 days, whatever the line is. The point is that in this case, they had sufficient time to accept or reject. That was the only condition, accept it or reject it. And under the rules, if it's not accepted but it was full and complete, it moots. And if it moots the individual plaintiff— What time does it moot? The standing is class representative or the plaintiff's individual standing? Well, it starts out—this offer was made after class certification was denied. At the time the offer was made, there was no motion for class certification. Class certification is denied on August 17, 2012. The offer is made September 7, 2012. The motion to reconsider is not filed until September 19, 2012. At the time, there is no motion for class certification. And just as you could say in Barber v. American Airlines, if you make the offer a full relief, it moots the claim because— It's a full relief, but that was unconditional in Barber. Well, if you—obviously, we think it's unconditional here. But in terms of the timing, going to Justice McClaren's question, all I'm saying is that at the time there was no motion pending. Class certification had been denied. If you look at footnote 1 in Barber, the court says in Barber, well, you can avoid the mootness determination if there's a motion pending. There was no motion pending, so it moots the individual claim. That's the end at that point. What about the individual claim and the standing for class representation? Well, now, that's an excellent question because we would have to acknowledge that the plaintiff does have standing to appeal the denial of class certification. Okay? We do acknowledge that. But if the class certification was appropriately denied, as we believe it was, and you put that to one side and you have an offer of full relief, that brought the dismissal as the appropriate disposition of the case when there's no class certification and there's no individual claim, nothing left. You said it mooted the issue. How does it moot the issue if the person has never been completely made whole to the extent that the $1,500 has never made it into their savings or checking account or pocket? All you have to do is make the offer under the case law. You make the offer. If they reject it, that doesn't solve their problem. My point is that you're using the term moot, and moot has a specific meaning, and mootness relates to the ability of the court to grant the relief sought. It has nothing to do with whether or not somebody, quote, unquote, has done something that would have stopped them from going forward or supposedly extinguish their claim. So if it's not mootness, what would a better term be? Well, it could be they're light standing because they no longer have a personal stake because they have been offered the relief whether they accept it or not. We don't let litigation proceed even after the only party before the court at that point on September 7, 2012, the individual plaintiff, GM Sign, has been offered every penny. Whether that offer is accepted or not, they won. They just don't want to walk away with the $1,500 and an injunction. Or I should say their attorneys don't want to walk away with $1,500 and an injunction. The money isn't there waiting for them. All they had to do was say we accept. Is that a condition? We make an offer, a condition upon your acceptance? All I'm saying is that we did everything we could. We offered them complete relief. And it wasn't as if we were saying... How hard would it have been to keep the offer open until the motion to dismiss was filed and heard? All I'm saying is I don't know of anything in the law that required an open-ended offer as to time. Under the federal rules, and I think this argument began with counsel talking about the federal rules, there's a time limit on offers of judgment. Now, there isn't anything in the Code of Civil Procedure that says that an offer... that it has a comparable provision that I can think of as far as an offer of judgment. Do we have any cases that tie that federal rule to these TCPA or any type of class cases that moot the class? I'm sorry, I didn't quite hear the beginning. Do we have any case law that ties that federal rule to these type of situations that moot the class? Well, I believe we cited in our brief cases from the Seventh Circuit where TCPA claims have... Well, I can't... I'm not sure if it's a TCPA claim. Okay. It may not be a TCPA claim, but I believe that there are other claims, other cases, I'm sorry, that we cited in our briefs from the Seventh Circuit because the Seventh Circuit has taken the lead in this area of enforcing unaccepted offers of judgment. That had expired under the federal rules. That had expired because they were not accepted within 14 days and then a motion to dismiss was made and granted. And that is the rule of the Seventh Circuit as opposing counsel well knows. We cited Damasco in our brief, and I believe Damasco, if shepherdized, will lead to other cases. Is the denial of a class certification immediately appealable? Yes, it is. If you don't appeal that within 30 days, is that... we wouldn't have jurisdiction, correct? Correct. I mean, well, I should say this. I suppose you can... you raised a question that was going to be part of my argument, and that is, you know, instead of going the route of a motion to reconsider, once the trial court on August 17 denied the motion for class certification, they had an appeal within 30 days. If they liked the record that they had made at that point, they could have gone straight to this court for relief. Under 306A8. They didn't do that. Within that same 30-day period, we made our offer of full relief. And instead of accepting or instead of appealing, they decided to make a motion to reconsider. And our position on that is, of course, that a motion to reconsider at that point did not confer any standing. If you like, Justice McClaren, when there was a... when their own claim was fully satisfied by the offer of full monetary and injunctive relief. I hear that my time is up. For the reasons set forth in our brief, we ask you to affirm. Thank you. Let me just ask you a quick question before you go. If we say that that offer was conditioned, it had a condition on it, and we say that motion to dismiss was improperly granted, okay? Okay. Then, you know, we talk about jurisdiction and some of these issues. There's a motion to reconsider pending. It's never been ruled on. Never been ruled on. So, do we... if we... again, this is hypothetical. If we were to say the motion to dismiss was improperly granted, do we get to the issue of commonality and all those other things with the motion to reconsider pending? I would have to say not. I mean, they decided to go a very convoluted way by making that motion to reconsider. All right? I mean, they could have simply gone straight up. We have our offer, and whatever happens, happens. But the motion to reconsider has never been ruled on. It raises these issues. The newly discovered evidence that Justice Jorgensen was referring to, the idea that we're going to modify this class definition. I think we would have to go back to the trial court into year... I guess it would be about year 11. And 11 years into this litigation against a company that was out of business since 2005. How would you characterize the motion to reconsider as a one just asking for reconsideration or also... Oh, it was more than that. ...presenting... It was more than that. I mean, it was asking for a new class definition, as I recall. And it had these six declarants, not in the record, but newly discovered. But not newly discovered because it could have just gone out and looked because they had the log, and they had every name and point of contact in the log, all 2,584. So I think it's a lot more than a motion to reconsider. It's really a do-over. It was a reset. It's a mulligan. Let's start all over again from scratch. So it was new evidence, but not necessarily undiscoverable or... Correct. Correct, because it was equally available to both sides. We produced the log. They had the log at all relevant times. They had the log. So I think it's... That doesn't appear to have been argued at least up until this point, though, the propriety of the motion to reconsider. I know you were arguing, your client, or probably not you personally, but you were arguing against it in the trial court. You were arguing that it be denied. But then it kind of got into this colloquy with the court about reopening discovery. It was an oral motion to reopen discovery. Right. I mean, what happened? I mean, to be frank, it was a six-and-a-half-page motion to reconsider. We didn't think motion to reconsider really raised anything that was more of a rehash of what was argued previously. Then they came in. That was from September. Then they come in with a newly discovered declarance, waiving them in front of the judge in December. That leads to a motion to reopen discovery. It was at that point that we said, okay, enough is enough. We made this offer. It's, you know, let's just try to kill it with the motion to dismiss. And I think that was perfectly appropriate under the law, at least as it exists as of this time. Again, we ask you to affirm. Thank you, Mr. Reusses. Mr. Rafferty, we'll move on. I'll try to be brief, a few points. First of all, in response to Justice McLaren's questions after consulting with co-counsel, what happened was the assets were assigned for the benefit of creditors. There was no new purchaser. So we added the S&E because he was the S&E presumably of the liabilities as well. And the issue, of course, is that the Supreme Court has affirmed this court's holding that there's insurance coverage. So we needed to make sure that the entity who holds the insurance coverage was in the case. With respect, again, to the EBR commonality issues, there wouldn't be many trials simply because there's no evidence outside of the 36 or the 45 people. This is a summary judgment issue. There's no disputed issues of fact, and so it can be handled efficiently, which is to say a naked representation by someone who wasn't even involved saying, hey, we got our list internally from customers, but with nothing else to back it up. Does that carry the day or not? And that shouldn't stand in the way of class certification. Third, counsel said something interesting, which is he appeared to concede that EBR is an affirmative defense, but then said, ah, the burden's still on the plaintiffs. But in this state, affirmative defense is the burden of proof is on the defendant asserting them. And that's their burden, and they haven't come up with anything, which is, again, the same as what happened in Sunhill. And finally, with respect to the offer of judgment, as the justices pointed out, it was withdrawn by its terms. It was not unconditional. And by the time the motion had come about, there was nothing out there. It wasn't that it was rejected. It was simply withdrawn. Do you want to comment on counsel's argument regarding the federal rule and the federal cases that an expiring offer will moot a case? I should say an expired offer. Well, certainly that wasn't the fact pattern in Barber, which is what controls this court. In Barber, incidentally, there wasn't an offer at all. It was the defendant actually electronically credited the account of the plaintiff, so the plaintiff was made whole. And in that circumstance ---- Yeah, but everybody doesn't have a credit card. It would be nice if you would produce a credit card for defense counsel so that he could have made you an offer. So I think to compare Barber seems somewhat disingenuous. Well, presumably they had a checkbook. Yeah, but that's not the point. Barber isn't that the offer was made. It was accepted. It went into the credit card account. Correct. I think that's right. And there's no chance for acceptance or rejection in this case because it was conditioned on the 12-day time limit, which was ---- So you couldn't have accepted it during those 12 days? I suppose it's possible, but ---- Was there anything that stood in your way? Is there any reason you could not have accepted it? Well, as we mentioned in the briefs, it was simply that the attorney and client couldn't get their ducks in a row and it wasn't reasonable to force that within 12 days. And I think that's why all of the precedent, including the older precedent on tender, requires really an unconditional offer. I think Justice Brook asked you about the federal rules, and do you have any comment on that? The comment is that, I mean, I'm not 100% familiar with those cases, but I do know that there is no comparable rule in the state, and I think that even in this case, of course, they conditioned their offer on something that wouldn't even meet the federal rules, a time limit. What's the standard of review here? Well, with respect to the class certification decision, it's abuse of discretion. With respect to the dismissal, it is no vote. But with some of the other cases that you cited where the finding of a class was affirmed, that was because in those cases the trial court had certified the class and the appellate court affirmed based on no abuse of discretion. So you'd be asking us here to find that there was an abuse of discretion. Right, which is what you did in Cruz under what we believe are analogous circumstances. Why is it a no vote? Because it's a question of law or because the facts are uncontroverted? I'm sorry. Why is it a no vote? Is it because it's a question of law or is it because the facts are uncontroverted? The dismissal is a question of law. Well, let's dissect or at least cut into the dismissal order. It was based upon this concept that having failed to accept a reasonable offer of release and discharge or reconciliation, whatever you want to call it, that you should be dismissed out. Now, is that a question of law or is that based upon uncontroverted facts? It's a mixed question of law and fact, I think, actually, now in thinking about it more. Now, if it's a mixed question of law and fact, is it manifestly erroneous or clearly erroneous? I mean, I think that it would be analogous to a summary judgment in that respect, and those would be denoted as well. Are there any material issues of fact then? Was the defendant entitled to a judgment as a matter of law? I don't believe he was. I mean, that's the standard of review. Is that what we're supposed to determine? I mean, I don't want to answer that. Yeah. You know, we're in the dark here. We need a flashlight or a candle or something. I understand, and I think at the end of the day, it really does come down to was there a condition or not, and we submit that a time limit is a condition. I'd like to thank the attorneys for their arguments today, and I guess we'll take them under advice, and we'll take a short recess.